**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| ANN MARIE REARDON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 3:16-cv-34 |
| ) | |
| MARK R. HERRING, in his official capacity as ) | |
| Attorney General of Virginia, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**FIRST AMENDED COMPLAINT**

Plaintiff, Ann Marie Reardon ("Plaintiff"), by counsel, pursuant to this Court's Order dated June 3, 2016, ECF Doc. 14, dismissing the Office of the Attorney General as a defendant, restyling the case in the style set forth above, and dismissing Count II without prejudice with leave to amend, hereby amends the Complaint, stating as follows:

**INTRODUCTION**

1. Plaintiff brings two causes of action under the Equal Pay Act of 1963, 29 U.S.C. § 206(d) *et seq.* (the "EPA"), against her former employer, Mark R. Herring, in his official capacity as the Attorney General of Virginia, for sex discrimination on the basis of pay and for unlawful retaliation against Plaintiff by discharging Plaintiff because Plaintiff complained about unequal pay to her supervisors.

**JURISDICTION AND VENUE**

2. Jurisdiction of this action is conferred on this Court by 29 U.S.C. § 216(b).

3. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the causes of action arise under the EPA, a law of the United States.

4. Venue for this action lies properly in the United States District Court for the Eastern District of Virginia, Richmond Division, pursuant to 28 U.S.C. § 1391(b), as the events giving rise to Plaintiff's claims occurred in the City of Richmond, which is a territory included within those assigned to the Richmond Division of the Eastern District of Virginia.

**PARTIES**

5. Plaintiff is a citizen of the Commonwealth of Virginia residing in the City of Richmond, Virginia.

6. Mark R. Herring is a citizen of the Commonwealth of Virginia and the Attorney General of Virginia. Mr. Herring was sworn into office as Attorney General of Virginia on or about January 11, 2014. Mr. Herring was the Attorney General of Virginia at the time of Plaintiff's termination and at the time of the filing of this Complaint.

7. As the Attorney General of Virginia, Mr. Herring is the chief executive officer of the Department of Law and the Office of the Attorney General. *See* Va. Code § 2.2-500. Mr. Herring is responsible for and operates the Office of the Attorney General.

8. Further, as the Attorney General of Virginia, Mr. Herring appoints assistant Attorneys General and fixes their salaries. *See* Va. Code § 2.2-501.

9. The Office of the Attorney General (the "OAG") carries out the duties and responsibilities of the Attorney General of Virginia.

10. The OAG includes a chief deputy attorney general, five deputy attorneys general who oversee 21 specialized sections of the law, and other employees including approximately 140 assistant attorneys general, additional lawyers appointed as counsel to particular agencies or universities, legal assistants, legal secretaries, and other professional support staff.

11. The OAG employed Plaintiff from approximately December 23, 2010 to June 15, 2015.

12. The principal office of the OAG is located in the City of Richmond, Virginia.

13. At all relevant times, Plaintiff was an "employee" of Mr. Herring as defined by 29 C.F.R. § 1620.8 and 29 U.S.C. § 203(e).

14. At all relevant times, Mr. Herring was and is an "employer" as defined by 29 C.F.R. § 1620.8 and 29 U.S.C. § 203(d).

## FACTUAL BACKGROUND

15. Plaintiff is a former Assistant Attorney General at the OAG.

16. Plaintiff was admitted to the Virginia State Bar as a licensed attorney in October 1984.

17. Plaintiff has practiced law from on or about August 1984 until April 1988 and from on or about April 2006 to the present.

18. The OAG and Kenneth T. Cuccinelli, II, then Attorney General of Virginia, hired Plaintiff on or about December 23, 2010 as an Assistant Attorney General III ("AAG III").

19. Plaintiff began her work at the OAG in a section of the OAG called Special Prosecutions and Organized Crime.

### The OAG Matrix Guidelines

20. At the time the OAG hired Plaintiff, and up until Plaintiff's termination, the OAG employed matrix guidelines to determine attorney classification and pay.

21. The OAG matrix guidelines included salary ranges for each attorney classification.

22. Under the OAG matrix guidelines, attorney classification is based upon years from bar date.

23. An attorney with 10 to 15 years from bar date (date an attorney is admitted to a state bar) is classified as AAG III.

24. The OAG hired Plaintiff as an AAG III with an initial annual salary of approximately $62,000.00.

25. The 2011 OAG matrix guidelines for attorneys classified as AAG III set a salary range of $70,000 to $90,000.

26. During 2011, Plaintiff discovered her annual salary was below the minimum salary for attorneys classified as AAG III under the 2011 OAG matrix guidelines.

27. Plaintiff first brought her salary discrepancy to the attention of Patrick Dorgan, employed by the OAG as Senior Assistant Attorney General and Section Chief, in 2011.

28. In response to Plaintiff's efforts to increase her salary to conform to the 2011 OAG matrix guidelines, the OAG increased Plaintiff's annual salary in 2012 to approximately $63,000.00, still well below the matrix guidelines.

29. In 2013, the OAG updated its matrix guidelines, increasing the salary range for attorneys classified as AAG III to $71,400 to $91,800.

30. By letter dated April 25, 2013, Mr. Cuccinelli, on behalf of the OAG, notified Plaintiff of an increase in her annual salary to $64,000.00 in recognition of her superior performance as reflected in her annual evaluation the prior year.

31. In 2014, the OAG reorganized Plaintiff's section, formerly entitled Special Prosecutions and Organized Crime, and renamed Plaintiff's section as Major Crimes and Emerging Threats.

32. As of 2014, Plaintiff's annual salary was approximately $65,280.00, well below the existing 2013 matrix guidelines at the OAG.

33. In early 2014, the OAG sent a questionnaire to all attorneys in the OAG requesting feedback regarding, in part, the policies and practices of the OAG.

34. On the questionnaire, Plaintiff specifically complained to the OAG that her annual salary was below the current matrix guidelines.

35. Furthermore, in early 2014, Plaintiff again brought her salary discrepancy to the attention of Linda Bryant, employed by the OAG as Deputy Attorney General responsible for Plaintiff's section at the OAG.

36. Ms. Bryant advised Plaintiff she would look into Plaintiff's complaint regarding her salary.

37. On May 29, 2015, the OAG announced changes in attorney compensation structure at the OAG, establishing new matrix guidelines for 2015 with new salary ranges for each attorney classification, including the classification of AAG III.

38. By e-mail sent to all attorneys at the OAG and dated May 29, 2015, the OAG provided additional details regarding the 2015 matrix guidelines, stating, in part, "the amount by which your salary falls under the new minimum for your classification (*if it falls under the new minimum at all*) represents the amount of the OAG-sponsored pay adjustment any individual attorney will receive in September." The new salary ranges were effective in September 2015.

39. The 2015 OAG matrix guidelines for attorneys classified as AAG III set a salary range of $90,800 to $136,200.

40. At the time the OAG announced the 2015 matrix guidelines, Plaintiff's salary ($65,280.00) was far below the minimum salary for an attorney classified as AAG III.

**Plaintiff's Unequal Pay Complaints to Supervisors**

41. On or about November 3, 2014, Plaintiff met with Michael Jagels, employed by the OAG as a supervisor of Plaintiff's section at the OAG, and Mr. Dorgan regarding her Performance Assessment for the evaluation period ending October 2014.

42. During the meeting on or about November 3, 2014, Mr. Jagels and Mr. Dorgan presented Plaintiff with a typed Performance Assessment, containing positive feedback regarding Plaintiff's performance, and read and reviewed the typed comments with Plaintiff.

43. In addition, during the meeting on or about November 3, 2014, Mr. Jagels, Mr. Dorgan, and Plaintiff made handwritten notes in the signature section of the Performance Assessment, containing positive feedback regarding Plaintiff's performance.

44. At the conclusion of the meeting on or about November 3, 2014, Mr. Jagels and Mr. Dorgan asked Plaintiff if she had any questions, or words to that effect. Plaintiff then stated and otherwise complained to Mr. Jagels and Mr. Dorgan about being paid below the matrix guidelines, less than everyone in her section at the OAG, and/or other male attorneys at the OAG, or words to that effect.

45. At this time, Plaintiff was the only female attorney in her section at the OAG.

46. Mr. Jagels and Mr. Dorgan advised Plaintiff they were working on Plaintiff's unequal pay issue, or words to that effect.

47. At this time in November 2014, Plaintiff was intimately involved as the lead attorney in two separate, extensive federal prosecutions as a Special Assistant United States Attorney: *United States v. Mobley* et al., Case No. 3:14-cr-122, with District Judge Honorable M. Hannah Lauck, and *United States v. Barnes* et al., Case No. 3:14-cr-121, with District Judge Honorable John A. Gibney.

48. Up to this time and through the trial in *Barnes*, Plaintiff worked considerable hours on both federal prosecutions.

49. On November 10, 2014, the Court in *Barnes* issued an order to continue the three-day jury trial for February 17, 2015.

50. On or about early February 2015, Ms. Bryant approached Plaintiff in her office and commented on how hard Plaintiff had been working on the two federal cases, or words to that effect. Plaintiff inquired of Ms. Bryant as to whether a decision had been made about her salary, or words to that effect. Plaintiff further complained to Ms. Bryant about being paid below the matrix guidelines, less than everyone in her section at the OAG, and/or other male attorneys at the OAG, or words to that effect.

51. After Plaintiff's unequal pay complaint to Ms. Bryant in early February 2015, Ms. Bryant rarely spoke to Plaintiff and actively avoided Plaintiff.

52. At this time, Plaintiff was still the only female attorney in her section at the OAG.

53. Shortly after Plaintiff's unequal pay complaint to Ms. Bryant in early February 2015, in mid-February 2015, a desirable exterior office with a window became available. The office was located directly across the hallway from Plaintiff's interior office and in Plaintiff's section of the OAG. Plaintiff was next in line for consideration for such an office. Ms. Bryant instead gave the office to Mr. Tommy Johnstone, an attorney at the OAG that is not in Plaintiff's section at the OAG.

54. On or about February 16, 2015, there was a snowstorm in Richmond, Virginia. Due to the inclement weather, the Court in *Barnes* postponed the trial and issued an order on February 18, 2015 rescheduling the trial for May 11, 2015.

55. On or about late March or early April 2015, Plaintiff approached Ms. Bryant in her office and again asked whether a decision had been made about her salary, or words to that effect. In addition, Plaintiff again complained to Ms. Bryant about being paid below the matrix guidelines, less than everyone in her section at the OAG, and/or other male attorneys at the OAG, or words to that effect.

56. From April 2015 through early May 2015, Plaintiff expended considerable time preparing for the three-day jury trial in *Barnes*, including preparing for the questioning of approximately twenty-five (25) witnesses at trial.

57. From May 11, 2015 to May 13, 2015, a three-day jury trial was held in *Barnes* in which Plaintiff successfully prosecuted all defendants.

58. After the successful prosecution in *Barnes* was announced on or about May 14, 2015, Ms. Bryant did not send Plaintiff's section at the OAG the customary e-mail congratulating Plaintiff or even announcing the favorable verdict of the trial.

59. From on or about May 22, 2015 to June 1, 2015, Plaintiff was on vacation.

60. On June 3, 2015, shortly after Plaintiff returned from vacation, Plaintiff discovered the e-mail regarding the 2015 matrix guidelines, stating, in part, "the amount by which your salary falls under the new minimum for your classification [$90,800 for AAG III] . . . represents the amount of the OAG-sponsored pay adjustment any individual attorney will receive in September."

61. Based on the e-mail regarding the 2015 matrix guidelines, Plaintiff expected an OAG-sponsored pay adjustment, or salary increase, of approximately $25,520.00.

62. On or about June 5, 2015, Plaintiff met with Mr. Jagels and thanked him, stating, "to the extent you and Linda [Ms. Bryant] were involved in changing the matrix guidelines, thank you," or words to that effect. Mr. Jagels responded, "I don't know. We'll see," or words to that

effect. When Plaintiff asked Mr. Jagels if he knew something, Mr. Jagels stated, "I don't know where they will get the money from [to pay you]," or words to that effect.

63. Approximately ten (10) days later, with no warning or prior performance counseling and despite Plaintiff's excellent performance record, on June 15, 2015, the OAG notified Plaintiff of the termination of her employment, effective July 9, 2015, allegedly due to her performance.

64. Plaintiff was then immediately escorted from the building and placed on leave until July 9, 2015.

65. The OAG's proffered reasons for Plaintiff's termination are pretextual and have no basis in fact.

### Plaintiff's Performance at the OAG

66. Plaintiff consistently excelled in her work at the OAG, including the period preceding her termination.

67. As set forth above, Plaintiff received a positive performance assessment from Mr. Jagels and Mr. Dorgan signed November 3, 2014 for the evaluation period ending October 2014.

68. Plaintiff's excellent performance record at the OAG in the period preceding her termination included, but was not limited to:

    a. Plaintiff successfully opposed a joint motion to suppress filed by the defendants in *Mobley* when the Court issued an Order denying the motion to suppress on November 25, 2014, leading to the entry of plea agreements as to each defendant;

    b. In January 2015, Plaintiff drafted the powdered alcohol bill (HB1908), which unanimously passed both houses of the General Assembly without objection or modification on February 16, 2015; and

9

c. As set forth above, Plaintiff successfully prosecuted multiple defendants in *Barnes* following a three-day jury trial from May 11, 2015 to May 13, 2015.

**<u>Plaintiff's Male Comparators</u>**

69. As of 2015, there were six attorneys in Plaintiff's section at the OAG.

70. Plaintiff was the only female attorney in her section at the OAG.

71. In addition to Mr. Jagels, the male attorneys in Plaintiff's section at the OAG included James Entas, Marc Birnbaum, Phillip Figura, Charles Quagliato, and John Butler. Hereinafter, Mr. Entas, Mr. Birnbaum, Mr. Figura, Mr. Quagliato, and Mr. Butler will be collectively referred to as the "male attorneys."

72. On information and belief, the OAG hired Mr. Entas on or about December 10, 2014 as an AAG III, based out of Norfolk, Virginia. On information and belief, in 2014, Mr. Entas earned an annual salary of $95,000.00. On information and belief, Mr. Entas has approximately twenty-one (21) years of bar experience.

73. On information and belief, the OAG hired Mr. Birnbaum on or about July 25, 2010 as an AAG II, based out of Fairfax, Virginia. On information and belief, in 2014, Mr. Birnbaum became classified as an AAG III and earned an annual salary of $87,520.00. On information and belief, Mr. Birnbaum has approximately thirteen (13) years of bar experience.

74. On information and belief, the OAG hired Mr. Butler on or about February 10, 2015 as an AAG II. On information and belief, Mr. Butler is currently based out of Richmond, Virginia. On information and belief, in 2014, Mr. Butler earned an annual salary of $86,100.00. On information and belief, Mr. Butler has approximately fifteen (15) years of bar experience.

75. On information and belief, the OAG hired Mr. Figura on or about March 10, 2006. On information and belief, Mr. Figura has been classified as an AAG III since at least on or about

2012. On information and belief, in 2014, Mr. Figura earned an annual salary of $80,000.00. On information and belief, Mr. Figura has approximately fourteen (14) years of bar experience.

76. On information and belief, the OAG hired Mr. Quagliato on or about November 10, 2006, based out of Richmond, Virginia. On information and belief, Mr. Quagliato has been classified as an AAG III since at least on or about 2012. On information and belief, in 2014, Mr. Quagliato earned an annual salary of $76,584.00. On information and belief, Mr. Quagliato has approximately fifteen (15) years of bar experience.

77. On information and belief, the OAG paid Plaintiff at an annual rate ($65,280.00) far less than each of the male attorneys in Plaintiff's section at the OAG.

78. On information and belief, the OAG paid Plaintiff at an annual rate approximately $11,304.00 less than the lowest paid male attorney in Plaintiff's section at the OAG (or approximately 17% less) and approximately $29,720.00 less than the highest paid male attorney in Plaintiff's section at the OAG (or approximately 45.5% less).

79. As of 2015, Plaintiff's annual salary was approximately $25,520.00 less than the minimum salary range for an attorney classified as an AAG III under the 2015 matrix guidelines (or approximately 39% less).

80. On information and belief, other female attorneys employed by the OAG are paid at an annual rate less than similarly situated male attorneys employed by the OAG.

**Plaintiff's Duties and Responsibilities at the OAG**

81. Plaintiff was a "line" attorney at the OAG and her duties and responsibilities at the OAG included, but were not limited to:

    a. Conducting criminal prosecutions on behalf of the Attorney General as authorized under § 2.2-511 of the Code of Virginia;

      b.      Conducting prosecutions as a Special Assistant United States Attorney of matters that arise out of the Identity Theft Task Force and the Environmental Crimes Task Force;

      c.      Creating and administering the REALITY project, the Attorney General's awareness campaign against prescription drug abuse;

      d.      Reviewing and making recommendations to the Attorney General on all requests pursuant to § 52-8.2 of the Code of Virginia for the Virginia Department of State Police to conduct criminal investigations of state and local elected officials;

      e.      Providing advice and legal representation to the Departments of State Police, Criminal Justice Services, and Alcohol Beverage Control;

      f.      Providing legal guidance and prosecutorial assistance to the Department of Environmental Quality and local jurisdictions regarding environmental crimes committed in the Commonwealth of Virginia;

      g.      Answering questions from citizens and completing any other duties relating to law enforcement as assigned;

      h.      Reviewing public safety bills submitted to the General Assembly for state, federal, and constitutional conflicts; and

      i.      Drafting opinions for the OAG.

82.    On information and belief, the male attorneys in Plaintiff's section at the OAG had similar and/or equal duties and responsibilities to Plaintiff.

## STATEMENT OF CLAIMS

### COUNT I:

### DISCRIMINATION UNDER THE EQUAL PAY ACT (29 U.S.C. § 206(d))

83. Plaintiff incorporates by reference and re-alleges each allegation set forth above.

84. Mr. Herring, by and through the OAG, paid Plaintiff less than the male attorneys within Plaintiff's section at the OAG.

85. Plaintiff performed equal work to the male attorneys within Plaintiff's section at the OAG.

86. Plaintiff's job required equal skill, effort, and responsibility to the jobs of the male attorneys within Plaintiff's section at the OAG.

87. Plaintiff performed her job under similar working conditions to the male attorneys within Plaintiff's section at the OAG.

88. The difference in pay between Plaintiff and the male attorneys within Plaintiff's section at the OAG was not due to a seniority system, a merit system, a system that measures earnings by quantity or quality of production, or a differential based on any factor other than sex.

89. Mr. Herring, by and through the OAG, willfully discriminated between employees on the basis of sex by paying Plaintiff wages less than the male attorneys in Plaintiff's section.

90. Mr. Herring, by and through the OAG, knew, or showed reckless disregard for the fact, that the discriminatory wage payment was prohibited by the EPA.

91. Due to the actions of Mr. Herring, by and through the OAG, Plaintiff suffered lost wages in the form of the wage differential between Plaintiff and the highest paid male attorney within Plaintiff's section at the OAG and Plaintiff has incurred, and will continue to incur, attorneys' fees and costs.

## COUNT II:

## UNLAWFUL RETALIATION UNDER THE EQUAL PAY ACT (29 U.S.C. § 215(a)(3))

92. Plaintiff incorporates by reference and re-alleges each allegation set forth above.

93. On or about November 3, 2014, at the conclusion of a meeting with Mr. Jagels and Mr. Dorgan regarding Plaintiff's Performance Assessment, Plaintiff complained to Mr. Jagels and Mr. Dorgan about being paid below the matrix guidelines, less than everyone in her section at the OAG, and/or other male attorneys at the OAG, or words to that effect.

94. Prior to Plaintiff's unequal pay complaint on or about November 3, 2014, Plaintiff received positive comments regarding her performance at the OAG.

95. On or about early February 2015 and late March or early April 2015, Plaintiff made two separate unequal pay complaints to Ms. Bryant about being paid below the matrix guidelines, less than everyone in her section at the OAG, and/or other male attorneys at the OAG, or words to that effect.

96. Between on or about November 3, 2014 and June 15, 2015, Plaintiff was the only female attorney in her section at the OAG.

97. Plaintiff had a good faith belief that Mr. Herring, by and through the OAG, was violating her rights under the EPA.

98. After Plaintiff's unequal pay complaint to Ms. Bryant in early February 2015, Ms. Bryant rarely spoke to Plaintiff and actively avoided Plaintiff.

99. In addition, shortly after Plaintiff's unequal pay complaint to Ms. Bryant in early February 2015, in mid-February 2015, Ms. Bryant gave a desirable exterior office with a window to a male attorney not in Plaintiff's section at the OAG, despite Plaintiff being next in line for consideration for such an office and the office being located in Plaintiff's section of the OAG.

100. Furthermore, after the successful prosecution in *Barnes* was announced on or about May 14, 2015, Ms. Bryant did not send Plaintiff's section at the OAG the customary e-mail congratulating Plaintiff or even announcing the favorable verdict of the trial.

101. On information and belief, Mr. Herring, by and through the OAG, did not immediately terminate Plaintiff following her unequal pay complaints on or about November 3, 2014, early February 2015, and late March or early April 2015 because Plaintiff was intimately involved as the lead attorney in two separate, extensive federal prosecutions as a Special Assistant United States Attorney.

102. To terminate Plaintiff before the conclusion of the trial in *Barnes* on May 13, 2015 would have jeopardized the trial given the large amount of trial preparation performed by Plaintiff, including preparing for the questioning of approximately twenty-five (25) witnesses at trial.

103. Not until after Plaintiff successfully prosecuted the defendants in *Barnes* following a three-day jury trial from May 11, 2015 to May 13, 2015, and after Plaintiff returned from vacation on or about June 1, 2015, did Mr. Herring, by and through the OAG, willfully discharge Plaintiff.

104. In addition, during a meeting with Mr. Jagels on or about June 5, 2015, Mr. Jagels indicated to Plaintiff doubt as to whether she would receive a pay increase, which infers and implies that Mr. Herring, by and through the OAG, intended to terminate Plaintiff's employment at that time.

105. Approximately two weeks after Plaintiff returned from vacation, with no warning or prior performance counseling and despite Plaintiff's excellent performance record, on June 15, 2015, Mr. Herring, by and through the OAG, terminated the employment of Plaintiff because of her complaints to her supervisors asserting her rights under the EPA.

106.    Mr. Herring, by and through the OAG, knew, or showed reckless disregard for the fact, that the retaliatory discharge of Plaintiff was prohibited by the EPA.

107.    Due to the actions of Mr. Herring, by and through the OAG, Plaintiff suffered lost wages and benefits, damage to her reputation as an attorney in the City of Richmond, and emotional and mental distress, including, but not limited to, humiliation and embarrassment.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff respectfully requests that this Court:

A.    Enter judgment in her favor and against Mark R. Herring, in his official capacity as Attorney General of Virginia;

B.    Declare the acts and practices complained of herein are in violation of Plaintiff's rights as secured by the Equal Pay Act of 1963, 29 U.S.C. § 206(d) *et seq.*;

C.    Award her two times the wage differential between Plaintiff and the highest paid male attorney within Plaintiff's section at the OAG for each pay period for three years prior to the date this Complaint is filed under COUNT I;

D.    Award her reasonable attorneys' fees and costs under COUNT I and COUNT II;

E.    Order her reinstated or constructively reinstated in the form of front pay in lieu of reinstatement to her former position, with the same seniority status that she would have had but for the unlawful retaliation, under COUNT II;

F.    Award her two times all back pay and benefits, including salary increases, bonuses, vacation pay, and health insurance, with interest on same running from July 9, 2015 until the date a final judgment is entered for her, under COUNT II;

G.    Award her all Virginia Retirement System benefits Plaintiff would otherwise be due;

H.    Award her reputational damages to compensate her for the loss of income and earning capacity that Defendant's conduct has caused under COUNT II;

I.    Award her money damages for the emotional distress caused by the unlawful actions of Defendant under COUNT II;

J.    Award her a separate amount to offset the adverse tax effects of lump sum payments of damages and/or back or front pay; and

K. Award all other such equitable relief as may be appropriate to effectuate the purposes of 29 U.S.C. § 215(a)(3) under COUNT II.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted,

ANN MARIE REARDON,
*Plaintiff*

By: _____/s/_____
James B. Thorsen, Esq.
VSB No. 18113
Jesse A. Roche, Esq.
VSB No. 82579
Attorneys for Ann Marie Reardon
THORSEN HART & ALLEN, LLP
5413 Patterson Avenue, Suite 201
P. O. Box 17094
Richmond, Virginia 23226
Telephone: (804) 918-6134
Facsimile: (804) 447-7813
E-mail: jthorsen@thalawfirm.com
E-mail: jroche@thalawfirm.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 23st day of June, 2016, a copy of the foregoing *First Amended Complaint* was filed electronically with the clerk of court using CM/ECF system, which will send notification of such filing (NEF) to the following:

Steven D. Brown
Alison D. Stuart
Attorneys for Defendants
ISLERDARE P.C.
411 East Franklin Street, Suite 203
Richmond, Virginia 23219
E-mail: sbrown@islerdare.com
E-mail: astuart@islerdare.com

                                                                                                          /s/_____
                                                James B. Thorsen, Esq.
                                                VSB No. 18113
                                                Jesse A. Roche, Esq.
                                                VSB No. 82579
                                                Attorneys for Ann Marie Reardon
                                                THORSEN HART & ALLEN, LLP
                                                5413 Patterson Avenue, Suite 201
                                                P. O. Box 17094
                                                Richmond, Virginia 23226
                                                Telephone: (804) 918-6134
                                                Facsimile: (804) 447-7813
                                                E-mail: jthorsen@thalawfirm.com
                                                E-mail: jroche@thalawfirm.com