IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



ANN MARIE REARDON

    Plaintiff,

v.                                      Civil Action No. 3:16cv34

MARK R. HERRING,
In his official capacity as
Attorney General of Virginia,

    Defendant.

**MEMORANDUM OPINION**

This matter is before the Court on Defendant's MOTION TO DISMISS COUNT II OF PLAINTIFF'S AMENDED COMPLAINT (ECF No. 21). For the reasons stated below, Defendant's MOTION TO DISMISS COUNT II OF PLAINTIFF'S AMENDED COMPLAINT (ECF No. 21) will be denied.

**BACKGROUND**

Plaintiff Ann Marie Reardon ("Reardon"), a former Assistant Attorney General ("AAG") at the Office of the Attorney General of Virginia ("OAG"), brought this suit against her former employer, Attorney General Mark Herring ("Herring"), alleging unequal pay relative to her male counterparts (Count I) and unlawful retaliation for complaining about that unequal pay (Count II). (Memorandum Opinion of June 3, 2016, ECF No. 13, 1-6) ("June 3 Opinion"). Herring filed a motion to dismiss under

Fed. R. Civ. P. 12. (ECF No. 5). As is relevant for this opinion, the Court found that Reardon's failure to plead any temporal connection between the protected activity and the alleged retaliation foreclosed the existence of a plausible causal link between her complaints and her termination. (June 3 Opinion 48-52). The Court dismissed Count II without prejudice and with leave to amend. (June 3 Opinion 52-53; Order, ECF No. 14). Reardon then filed a First Amended Complaint ("FAC"), which included additional information about the circumstances of Reardon's pay complaints (FAC, ECF No. 18), and Herring filed this motion to dismiss Reardon's retaliation claim. (Def.'s Mtn. to Dismiss Count II of Pl.'s Am. Compl., ECF No. 21).

## LEGAL STANDARD

Fed. R. Civ. P. 12(b)(6) permits a party to move for dismissal of a claim if the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 8(a)(2) requires "a short and plain statement of the claim" showing that the pleader is entitled to relief. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Courts should assume the veracity of all well-pleaded allegations in the Complaint, and should deny a motion to dismiss where those well-pleaded allegations state a plausible claim for relief. Id. at 679. A claim is "plausible" when the plaintiff pleads facts sufficient to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. Twombly, 550 U.S. at 55. The court should grant a motion to dismiss, however, where the allegations are nothing more than legal conclusions, or where they permit a court to infer no more than a possibility of misconduct. Iqbal, 556 U.S. at 678-79.

**ANALYSIS**

**A.    Elements of a Prima Facie Retaliation Claim**

The Equal Pay Act ("EPA"), as incorporated into the Fair Labor Standards Act ("FLSA"),[1] provides that it is unlawful "to discharge or in any other manner discriminate against an employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter." 29 U.S.C. § 215(a)(3). Thus, to state a claim for retaliation, a plaintiff must plausibly allege: "(1)

---

[1] O'Neill v. Allendale Mut. Ins. Co., 956 F.Supp. 661, 665 n. 8 (E.D. Va. 1997) (noting that the "Equal Pay Act ... directly incorporates § 215(a)(3) of the FLSA.").

3

engagement in protected activity, (2) 'materially adverse action ... which ... might well have dissuaded a reasonable worker from making or supporting a charge of discrimination,' and (3) causality."[2] Hinton v. Virginia Union Univ., No. 3:15CV569, 2016 WL 2621967, *17 (E.D. Va. May 5, 2016 (quoting Burlington N. & Santa Fe Rwy. v. White, 548 U.S. 53, 68 (2006)) (discussing elements of Title VII retaliation); Darveau v. Detecon, Inc., 515 F.3d 334, 340 (4th Cir. 2008) (noting the "almost uniform practice of courts in considering the authoritative body of Title VII case law when interpreting the comparable provisions of other federal statutes," and applying Title VII case law to the FLSA).

The dispositive issue in the motion to dismiss the FAC is whether Riordan has plausibly alleged causality. A prima facie showing of causality requires either: (1) that the retaliation closely followed the protected activity, or (2) that the plaintiff put forth a sufficient explanation for the delay between the protected activity and the alleged retaliation.

---

[2] To establish a claim for retaliation under the FLSA, a plaintiff may offer direct evidence that she was retaliated against because she engaged in protected activity, or apply the "burdenshifting" scheme initially articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), which requires that a plaintiff plead a prima facie case. Hackney v. Arlington Cty. Police Dept., 145 F.3d 1324, 1998 WL 230849, at *4 (4th Cir. May 11, 1998). Because Reardon has alleged no facts that would permit a finding that she has pled a "direct" case, she must plead each of the elements of a prima facie case.

4

Hinton, 2016 WL 2621967 at *23 (relying on Perry v. Kappos, 489 F. Appx. 637, 643 (4th Cir. 2012)). As to the first method, neither the Supreme Court nor the Fourth Circuit has adopted a bright line for how closely the adverse action must follow the protected conduct. Perry, 489 F. App'x at 643. However, even a ten-week delay "is sufficiently long so as to weaken the inference of causation between the two events." Id. (quoting King v. Rumsfeld, 328 F.3d 145, 151 n.5 (4th Cir. 2003)). As to the second option, where the time between the protected conduct and the adverse action "is too great to establish causation based solely on temporal proximity, a plaintiff must present 'other relevant evidence ... to establish causation,' such as 'continuing retaliatory conduct and animus' in the intervening period." Perry, 489 F. App'x at 643 (relying on Lettieri v. Equant, Inc., 478 F.3d 640, 650 (4th Cir. 2007)).

1. **Overcoming Delay Under Existing Fourth Circuit Law**

The Fourth Circuit has recognized two ways to plead an explanation sufficient to overcome the weakened causality inference where there is a delay between the alleged protected activity and the alleged adverse action.

First, the most common "sufficient explanation" in the Fourth Circuit requires alleging "continuing retaliatory conduct and animus." Perry, 489 F. App'x at 643. The conduct deemed

5

sufficiently retaliatory under existing case law is quite serious. E.g. Lettieri, 478 F.3d at 650 (finding ongoing animus where plaintiff was stripped of significant job responsibilities, supervisory responsibilities, and ability to meet with clients); Murphy-Taylor v. Hofmann, 968 F. Supp. 2d 693, 722 (D. Md. 2013) (finding ongoing animus where employer failed to separate plaintiff from her harasser and issued poor performance reviews); Elder v. DRS Techs., Inc., No. 1:13CV799 JCC/TRJ, 2013 WL 4538777, at *7 (E.D. Va. Aug. 27, 2013) (finding ongoing animus where employer deployed civilian employee to life-threatening active combat site in Afghanistan).

Second, the Fourth Circuit has also acknowledged that "regular acts showing animus or antagonism, coupled with valid reasons why the adverse action was not taken immediately" can serve as a sufficient explanation for delay between the protected action and retaliation. Hart v. Hanover Cty. Sch. Bd., No. 3:10-CV-794, 2013 WL 1867388, at *5 (E.D. Va. May 2, 2013), aff'd, 547 F. App'x 298 (4th Cir. 2013) (emphasis added), (relying on Lettieri, 478 F.3d at 650). In Lettieri,

> Lettieri contacted ... Human Resources on December 17, 2001, to report gender discrimination by Taylor and Parkinson. Over the next two days Hausner conveyed Lettieri's complaints to the two men. After Lettieri lodged her complaint, Taylor gave up on his plan to transfer her to New York. But the very next month (January 2002) Taylor stripped Lettieri of significant job

6

> responsibilities. He reduced her supervisory responsibilities over the sales team and took away her authority to set prices and meet directly with Sprint clients. These steps made it easier for Taylor to take the position later that Lettieri was not needed and should be terminated. Before long, in February or March 2002, Taylor and Parkinson began discussions about firing Lettieri. This was well before Equant asked managers such as Taylor to look for positions that could be eliminated. Right after Radochia took over Parkinson's role in April 2002, Taylor informed Radochia that he had "big issues with [Lettieri]" and that "her role [was] not really needed." J.A. 264. After the decision was made to terminate Lettieri in June of 2002 because her position was supposedly redundant, Taylor immediately sought approval to hire a replacement for Lettieri.
>
> These intervening events - which occurred regularly after Lettieri's complaint and can reasonably be viewed as exhibiting retaliatory animus on the part of Taylor and Parkinson - are sufficient to show a causal link between Lettieri's complaint and her termination.

Lettieri, 478 F.3d at 650-51. Similarly, in Murphy-Taylor, a pattern of antagonistic behavior (including failure to quash rumors and a poor performance review) <u>and</u> adverse action at the first convenient opportunity overcame a delay of fifty-one months between the plaintiff's protected conduct and the adverse action. Murphy-Taylor, 968 F. Supp. 2d at 721-22.[3]

---

[3] In Murphy-Taylor, plaintiff's employer (1) demonstrated ongoing animus by refusing to quash rumors about plaintiff, refusing to prevent contact between plaintiff and her alleged harasser, and gave plaintiff a poor performance review; and (2) acted at the

7

In other words, under the second Fourth Circuit approach, an employer steadily working toward effecting an adverse action and subsequently taking that action at the first convenient opportunity, <u>combined with</u> articulated continuing animus, can meet the plausibility standard for pleading causality, at least at the motion to dismiss stage.

### 2. Overcoming Delay Using the "Valid Reason" Approach

Other courts of appeals have adopted a rule that goes one step further, and have found plausible retaliation upon a pleading that adverse action was delayed until the first convenient opportunity <u>without</u> any accompanying evidence of continuing animus. <u>Kachmar v. SunGard Data Sys., Inc.</u>, 109 F.3d 173, 178 (3d Cir. 1997) ("When there may be valid reasons why the adverse employment action was not taken immediately, the absence of immediacy between the cause and effect does not disprove causation.");[4] <u>see also</u> <u>Porter v. California Dep't of</u>

---

earliest convenient opportunity by terminating plaintiff a single day after plaintiff's harasser – against whom plaintiff's employer had taken no disciplinary action – pled guilty to sexual assault against plaintiff. <u>Id.</u> at 721-22.

[4] The Third Circuit employs the same test for prima facie retaliation as does the Fourth. <u>E.g.</u>, <u>Kachmar</u>, 109 F.3d at 177. Like the Fourth Circuit, the Third Circuit also permits circumstantial evidence of a pattern of antagonism to overcome a delay between protected activity and adverse action. <u>E.g.</u>, <u>Farrell v. Planters Lifesavers Co.</u>, 206 F.3d 271, 280 (3d Cir. 2000). This strongly suggests that the "pattern of antagonism" or "valid reason" approaches are complimentary, not conflicting, ways of overcoming a delay, and that employing the "valid

8

Corr., 419 F.3d 885, 895 (9th Cir. 2005) (relying on Kachmar); Richmond v. Oklahoma Univ. Bd. of Regents, 162 F.3d 1174 (10th Cir. 1998) (relying on Kachmar); Dixon v. Gonzales, 481 F.3d 324 (6th Cir. 2007) (noting Kachmar but finding no valid reason why the adverse employment action was not taken immediately).

In Kachmar, plaintiff worked as an attorney on a three-person in-house counsel team. Kachmar, 109 F.3d at 175, 178. Plaintiff complained to her supervisor about her own pay and the pay and treatment of others at the company. Id. at 175-76. Four months after her final instance of protected activity – during which plaintiff's relationship with her supervisor was "strained" – plaintiff was terminated. Id. at 176, 178. In a motion to dismiss plaintiff's Title VII retaliation claim, defendant argued that "even a four month gap would be too long to allow an inference of causation." Id. at 178. The Third Circuit observed that

> [i]t is important to emphasize that it is causation, not temporal proximity itself, that is an element of plaintiff's prima facie case, and temporal proximity merely provides an evidentiary basis from which an inference can be drawn. The element of causation, which necessarily involves an inquiry into the motives of an employer, is highly context-specific. When there may be valid reasons why the adverse employment action was not taken immediately, the

---

reason" approach would add to, not conflict with, existing Fourth Circuit jurisprudence on retaliation.

9

> absence of immediacy between the cause and effect does not disprove causation.
>
> SunGard may have recognize that termination of Kachmar immediately after her January 15, 1993 meeting with [her supervisor] could have resulted in the disruption of the small, three-attorney in-house counsel's office. After all, Kachmar was senior in-house counsel, not one of many interchangeable employees on an assembly line. We do not know whether she was involved in long-term negotiations or litigation that could have deterred SunGard from terminating her immediately.

Id.[5]

The Third Circuit's reasoning is persuasive, and the "valid reason" approach taken there as a means to overcome the effect of an extended delay is complimentary of, rather than contradictory to, the Fourth Circuit's decisions on overcoming delay.

First, under the Third Circuit's "valid reason" approach, the Fourth Circuit's predominant ongoing animus approach, and the Fourth Circuit's Lettieri blended approach, the plaintiff

---

[5] The Court notes that the Kachmar court's "there could have been..." approach, requiring the defendant to show improbability rather than requiring the plaintiff to allege plausibility, is outmoded in the wake of Twombly and Iqbal. See, e.g., Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009). In the present case, however, Reardon affirmatively pleads that she was "involved in ... litigation that could have deterred [OAG] from terminating her immediately," particularly pointing to two cases in which she was lead counsel. Thus, Reardon has pled facts (her role as lead counsel on two ongoing trials) from which the Court may reasonably infer a "valid reason[] why the adverse employment action was not taken immediately." Reardon accordingly avoids any issues arising from the shift in pleading standards after the Third Circuit decided Kachmar.

10

pleads intervening facts that bridge the gap between the distant protected act and the delayed adverse action, permitting the district court to make a reasonable inference in the plaintiff's favor that the protected act and adverse action were related. The consistency of the animating principle underlying each of these three analytical constructs teaches that the Third Circuit's valid reason approach, if properly pleaded, may overcome a lengthy delay that would otherwise foreclose a plausible pleading of causality.[6]

Second, the "valid reason" approach, which permits an inference of causation where an employer acts at the first <u>convenient</u> opportunity to take adverse action, is consistent with the Fourth Circuit approach that permits an inference of causation where an employer takes adverse action at the first <u>possible</u> opportunity. E.g., <u>Price v. Thompson</u>, 380 F.3d 209, 213 (4th Cir. 2004) (assuming, without deciding, "that in the failure-to-hire context, the employer's knowledge coupled with an adverse action taken at the first opportunity satisfies the causal connection element of the prima facie case"); <u>Johnson v. Scott Clark Honda</u>, No. 3:13-CV-485-RJC-DCK, 2014 WL 1654128, at *4 (W.D.N.C. Apr. 25, 2014), aff'd, 584 F. App'x. 180 (4th Cir.

---

[6] Of course, there must exist a factual predicate that will support such a pleading. Without that factual base, the pleading runs the risk of running afoul of Fed. R. Civ. P. 11.

11

2014) (applying "first opportunity" to employee's request to become a full time employee).

Because the "valid reason" approach is persuasive and is consistent with existing Fourth Circuit case law, the Court adopts it as an approach which, like the ongoing animus approach, may overcome an extended delay between protected activity and adverse action, thus re-establishing a reasonable probability of causation, at the motion to dismiss stage.

**B. Application to Reardon's Claims**

According to the FAC, Plaintiff engaged in protected activity: (1) on November 3, 2014; (2) "on or about early February 2015"; and (3) "on or about late March or early April 2015." (FAC ¶¶ 41-44, 50, 56; Pl.'s Br. in Opp. to Def.'s Mtn. to Dismiss, ECF No. 24 ("Pl.'s Opp."), 11). Reardon was notified of her termination on June 15, 2015. (FAC ¶ 63). Accordingly, approximately eight or ten weeks elapsed between the final instance of alleged protected activity and Reardon's termination. This places Reardon in the category of cases where the "separation between the two events is sufficiently long so as to weaken significantly the inference of causation,' requiring [plaintiff] to present additional evidence of retaliation." Perry, 489 F. App'x at 643.

12

Reardon argues that she has, in fact, "sufficiently allege[d] instances of retaliatory animus or intervening antagonism, coupled with valid reasons why [Herring's office] did not immediately terminate [Reardon's] employment." (Pl.'s Opp. 12).

### 1. Reardon Has Not Pled Ongoing Animus

In support of her assertion of ongoing retaliatory animus, Reardon points to the conduct of a supervisor, Linda Bryant. (Pl.'s Opp. 13). Reardon alleges that: (1) "[a]fter [Reardon's] unequal pay complaint to Ms. Bryant in early February 2015, Ms. Bryant rarely spoke to Plaintiff and actively avoided Plaintiff", and (2) "[s]hortly after Plaintiff's unequal pay complaint to Ms. Bryant in early February 2015, in mid-February 2015," Bryant assigned a "desirable exterior office with a window" to another attorney, despite the fact that "[Reardon] was next in line for consideration for such an office"; and (3) Bryant did not congratulate Reardon or "send [Reardon's] section ... the customary email congratulating [Reardon] or even announcing the favorable verdict" of a trial in which Reardon served as lead attorney. (FAC ¶¶ 47, 54, 51-53, 56-58; Pl.'s Opp. 13).

The conduct that Reardon identifies does not rise to the level required for ongoing animus. The conduct that suffices to establish "ongoing animus" in existing case law is much more

13

severe than the conduct that Reardon pleads here. E.g. Lettieri, 478 F.3d at 650; Murphy-Taylor, 968 F. Supp. 2d at 722; Elder 2013 WL 4538777, at *7; Hart, 2013 WL 1867388, at *5 (noting Third Circuit case finding ongoing animus "based on a pattern of harassment, discipline for minor matters, and attempts to provoke the plaintiff") (relying on Robinson v. Se. Pennsylvania Transp. Auth., Red Arrow Div., 982 F.2d 892, 895 (3d Cir. 1993)). Compared to the conduct alleged in those cases, Reardon's allegations plead insignificant conduct[7] that is not sufficient to permit a reasonable inference that Reardon was terminated in retaliation for her protected behavior.

### 2. Reardon Has Pled A Valid Reason For Delayed Adverse Action

In support of her assertion of valid reasons why Herring's office did not immediately terminate Reardon's employment, Reardon alleges that, from November 2014 through May 2015, she

---

[7] On that point, it is useful to remember that, in determining what behavior constitutes harassment, the Supreme Court observed that federal labor laws are not intended to create "a general civility code for the American workplace." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75 (1998); see also Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 69 (2006) (noting, in context of determining whether an action is materially adverse, that "[a] supervisor's refusal to invite an employee to lunch is normally trivial, a nonactionable petty slight").

14

served as lead attorney on two separate "extensive" prosecutions, and that terminating her before the conclusion of those matters "would have jeopardized the trial given the large amount of trial preparation performed by" Reardon. (FAC ¶¶ 47-50, 54, 56-58, 101-03).

The Third Circuit contemplated exactly such a circumstance in Kachmar and concluded that this situation provided a valid reason for delay between protected activity and adverse action, so as to re-establish the presumption of a causal link at the motion to dismiss stage. Kachmar, 109 F.3d at 178 ("SunGard may have recognized that termination of Kachmar immediately after her January 15, 1993 meeting with [her supervisor] could have resulted in the disruption of the small, three-attorney in-house counsel's office .... We do not know whether she was involved in ... litigation that could have deterred SunGard from terminating her immediately.").[8] It is logical to infer that a legal employer, having invested significant time in one attorney's preparation for a matter, might well delay taking adverse action against that attorney until the termination of the matter, so as to avoid the need to squander resources bringing a replacement up to speed.

---

[8] Again, although Kachmar's "we do not know" approach has been supplanted by Twombly and Iqbal, Reardon has pled specific facts such that the Court does know - accepting Riordan's allegations as true - that she was involved in litigation at the time she engaged in protected activity.

15

In this case, drawing all reasonable inferences in Reardon's favor, it is plausible that the delay between Reardon's protected activities and OAG's adverse action is attributable to OAG's desire to avoid disrupting the trials that Reardon was prosecuting in late 2014 and early 2015. By pleading this valid reason for delay, Reardon has re-established an inference of causation which permits Count II to survive Herring's Fed. R. Civ. P. 12(b)(6) motion to dismiss.

## CONCLUSION

For the reasons stated above, Defendant's MOTION TO DISMISS COUNT II OF PLAINTIFF'S AMENDED COMPLAINT (ECF No. 21) will be denied.

It is further ordered that the facts and legal contentions are adequately presented in the materials before the Court and oral argument would not aid the decisional process on Defendant's MOTION TO DISMISS COUNT II OF PLAINTIFF'S AMENDED COMPLAINT (ECF No. 21).

It is so ORDERED.

/s/  REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: August 23, 2016